**Paul ASH and Bruce Ash, d/b/a Vista Lanes Limited, a Partnership, Plaintiff,**

v.

**RICHARD J. LYNCH & CO., INC., Defendant.**

**No. CV–86–1580.**

United States District Court,
E.D. New York.

Sept. 25, 1986.

Craig W. Miller, Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C., Roseland, N.J., for plaintiff.

Peter M. Burke, Young, Rose & Millspaugh, P.C., Roseland, N.J., Cadwalader, Wickersham & Taft, New York City, for defendant.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Paul Ash and Bruce Ash are partners in Vista Lanes Limited (Vista), which has its principal place of business in Tuscon, Arizona. They agreed to purchase pinsetters for bowling alleys from Richard J. Lynch & Co., Inc. (Lynch), a New York corporation that was to act as a middleman. Lynch, in turn, had entered into a contract to obtain those pinsetters from Lyons Bowling Center, Inc. (Lyons), a New Jersey corporation.

The agreement between Vista and Lynch was never consummated, because Lyons did not deliver the pinsetters to Lynch. On April 18, 1986, Lynch sued Lyons and Vista in a New Jersey state court. Lynch alleged that Lyons had breached its contract to sell pinsetters and sought damages, as well as indemnification against any claim brought against Lynch by Vista. Lynch's New Jersey complaint further alleges that Vista, after inducing Lynch to obtain substitute pinsetters, improperly rejected the substitutes.

On May 9, 1986, Vista sued Lynch in this court, seeking a refund of the $35,750 that Vista had paid Lynch, plus interest; $100,-000 in consequential damages; and $250,-000 in punitive damages. Lyons is not a party to this action, and Lynch represents that it will be impossible for this court to obtain in personam jurisdiction over Lyons. This difficulty does not much concern Vista, which says that it has no quarrel with Lyons and seeks damages only from Lynch. Moreover, pursuant to the rules of this district, Vista has consented to arbitration of its claims against Lynch and the $50,000 cap on damages attendant to that procedure.

Vista answered Lynch's New Jersey complaint on June 20, 1986 and counterclaimed for the $35,750 refund and unspecified compensatory and punitive damages.[1] Lynch, which has yet to answer Vista's complaint in this court, now moves to stay proceedings in this action pending termination of the New Jersey lawsuit. According to Lynch, a stay would serve the interest of convenience, because the pinsetters that are the subject of litigation and the attorneys for all the parties come from Essex County, New Jersey, where the state suit is pending. Additionally, Lynch maintains that a stay would serve to avoid piecemeal litigation and that the New Jersey action has proceeded well into discovery, while nothing more than Vista's complaint and the present motion papers are before this court.

In opposition to the motion, Vista contends that discovery has not proceeded very far in New Jersey and that there is no important state public policy that requires this dispute to be resolved in the state courts. Vista disputes Lynch's suggestion that abstention is appropriate in view of the absence of federal questions, arguing that "diversity claimants are not second-class litigants," *Sears, Roebuck & Co. v. Travelers Indemnity Co.*, 628 F.Supp. 122, 123 (N.D.Ill.1986).

### I. *Colorado River Abstention*

Abstention is a "judge-made doctrine" that permits federal courts to decline jurisdiction under "narrowly limited 'special cir-

---

1. Vista's New Jersey answer was signed by the partnership's current attorneys in this court. Vista's complaint in this action was signed by other attorneys who no longer represent Vista in connection with its dispute with Lynch. Apparently, this change of attorneys explains the willingness of current counsel for Vista to accept the $50,000 ceiling on damages mandated by the arbitration procedure in this court.

cumstances.' " *Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967) (quoting *Propper v. Clark,* 337 U.S. 472, 492, 69 S.Ct. 1333, 1344, 93 L.Ed. 1480 (1949)). In *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court conferred legitimacy on a "fourth type" of abstention. *See* 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4247, at 502 (1978). The three other types of abstention, which have come to life in the past fifty years, were summarized in *Colorado River*:

(1) *"Pullman* abstention," named after *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), provides for avoidance of jurisdiction " 'in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.' " *Colorado River, supra,* 424 U.S. at 814, 96 S.Ct. at 1244 (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959)). *See, e.g., Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 305–06, 99 S.Ct. 2301, 2312, 60 L.Ed.2d 895 (1979); *Elkins v. Moreno,* 435 U.S. 647, 660–62, 98 S.Ct. 1338, 1346–47, 55 L.Ed.2d 614 (1978).

(2) *"Burford* abstention," named after *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), is "appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case than at bar." *Colorado River, supra,* 424 U.S. at 814, 96 S.Ct. at 1244.

(3) Additionally, "abstention is appropriate where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings; state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining the closure of places exhibiting obscene films; or collection of state taxes." *Id.* at 816, 96 S.Ct. at 1245–46 (footnote and citations omitted). *See e.g., Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

*Colorado River*'s "fourth type" of abstention, which permits "dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration," *id.* 424 U.S. at 818, 96 S.Ct. at 1246, is not freely exercised. *See, e.g., Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.,* 800 F.2d 325, 327 (2d Cir.1986) (heavy presumption favoring exercise of jurisdiction). While it was once argued that *Colorado River*'s "exceptional circumstances" test was undermined in *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), the Supreme Court has rejected that argument. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

*Colorado River* did not fix "a hard-and-fast rule" for the type of abstention it approved, *id.* at 15, 103 S.Ct. at 936, but it did enumerate factors for judicial consideration:

> [T]he court first assuming jurisdiction over property may exercise that jurisdictions to the exclusion of other courts.... In assessing the appropriateness of dismissal in the event of an exercise of concurrent jurisdiction, a federal court may also consider such factors as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained by the concurrent forums.

*Colorado River, supra,* 424 U.S. at 818, 96 S.Ct. at 1246–47 (citations omitted).

In addition to the four factors discussed by *Colorado River,* the Supreme Court has approved consideration of "the fact that federal law provides the rule of decision on the merits." *Moses H. Cone, supra,* 460 U.S. at 23, 103 S.Ct. at 941. In this connection, "abstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the fed-

eral courts." *Andrea Theatres, Inc. v. Theatre Confections, Inc.*, 787 F.2d 59, 62 (2d Cir.1986). *See generally Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 360–63 (2d Cir.1985) (analyzing *Colorado River* and *Moses H. Cone*).

## II. *Application of the Law to the Facts*

■ Against this background, the court considers the facts and procedural posture of Vista's claim against Lynch. Preliminarily, Lynch argues that *Colorado River* and *Moses H. Cone* are inapposite because the relief sought is a stay—rather than dismissal—of Vista's federal action. The argument is fatuous, because "a stay is as much a refusal to exercise federal jurisdiction as a dismissal." *Moses H. Cone, supra*, 460 U.S. at 28, 103 S.Ct. at 943. In the event of either a stay or dismissal, Vista will be required to litigate its claims in state court; thus, Lynch's purported distinction is one without a difference.

■ The court turns to the factors set forth in *Colorado River* and *Moses H. Cone*. The first factor discussed in *Colorado River* has no bearing here, because this is not a case of in rem jurisdiction. As such, there is no court that first exercised jurisdiction over property.

The other factors listed in *Colorado River* are relevant to the court's inquiry. While Lynch points out that the pinsetters at issue, the attorneys, and the non-party witnesses all come from New Jersey, this does not render the federal forum inconvenient per se. Lynch, the defendant, is incorporated in New York. Vista, a partnership from Arizona, cannot be expected to find this forum any less convenient than New Jersey; indeed, Vista chose to sue here. Although the court can agree with Lynch that New Jersey seems a more convenient forum, this factor does not weigh all that heavily in favor of abstention.

Because it apparently will be impossible for this court to obtain jurisdiction over Lyons, the New Jersey corporation that was supposed to sell the pinsetters to Lynch for resale to Vista, there is a danger of piecemeal litigation. It is possible that Vista will obtain a judgment against Lynch in this court, and that Lynch will be required to proceed separately against Lyons in New Jersey. On the other hand, even if all the parties litigated their claims in New Jersey and nowhere else, Lynch would still be required to try an essentially bifurcated action. In the New Jersey action, Lynch would attempt to prove that Vista wrongfully rejected the substitute pinsetters and that Lynch was not liable for failure to deliver the pinsetters initially agreed upon. Additionally, using different facts and arguments, Lynch would attempt to prove its breach of contract claim against Lyons. As with the "convenience of the forum" factor, the "piecemeal litigation" factor cuts in favor of Lynch, but not with exceptional force.

The final component of the *Colorado River* test is the order in which the concurrent forums obtained jurisdiction. Here, the New Jersey action came first, but the Second Circuit has observed: "Decision does not rest on a race to the courthouse. Instead, this factor is considered in a common-sense manner by examining how much progress has been made in each forum." *Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir.1985) (citing *Moses H. Cone, supra*, 460 U.S. at 21–22, 103 S.Ct. at 940). It is true that discovery is underway in the New Jersey action, while issue has yet to be joined in this court. But Vista's willingness to arbitrate its claim against Lynch points to a speedy and inexpensive resolution of that dispute. Depending on the outcome of the arbitration, the Lynch-Lyons dispute might go forward in New Jersey, at a pace and cost this court is in no position to predict. Vista is not concerned with the outcome of the Lynch-Lyons dispute; understandably, Lynch prefers to tell its story in a forum that can hear its disputes with both Vista and Lyons. In view of all these considerations, this court cannot give great weight to the earlier starting date of the New Jersey action. Because of Vista's willingness to

arbitrate, it might even be argued that this action should be deemed closer to conclusion than the New Jersey suit. Regardless, such a finding is unnecessary to a conclusion that the final *Colorado River* factor does not tip the balance significantly in favor of abstention.

The fifth factor—derived in *Moses H. Cone* from the combination of the four-vote dissenting opinion and Justice Blackmun's concurrence in the judgment in *Will v. Calvert, supra, see Moses H. Cone, supra,* 460 U.S. at 23, 103 S.Ct. at 941—is whether federal or state law controls. This action is governed exclusively by state law, so the fifth factor favors Lynch. In light, however, of the effect of the first four factors, which provided less than overwhelming support for Lynch's motion, the court is required to deny the motion for a stay. Lynch has shown circumstances that tend to justify abstention, but it has not shown the requisite exceptional circumstances. A federal court is not permitted lightly to decline jurisdiction, and Lynch's arguments are not sufficiently compelling to make this one of the rare cases when the "fourth type" of abstention is warranted. Accordingly, Lynch's motion to stay the present action is denied.

SO ORDERED.