Robert COHEN, Trustee of the Robert Cohen Revocable Trust—1987, on behalf of Simon Cohen Real Estate & Management Co., and Simon Cohen Real Estate & Management Co., Plaintiffs,

v.

Robert J. REED, Defendant.

Robert J. REED, individually and derivatively on behalf of Simon Cohen Real Estate & Management Company, a Limited Partnership, Plaintiff,

v.

Irene WOLFF et al., Defendants.

Nos. 90–CV–2795(JS), 94–CV–241(JS).

United States District Court, E.D. New York.

Nov. 18, 1994.

Broudy & Jacobson by Lee D. Unterman, New York City, Katch, Sender & Wasserman, P.C. by Harvey Sender, Denver, CO, for plaintiffs.

Speno Goldman Goldberg Steingart & Penn, P.C. by Richard F. Harrison, Mineola, NY, for defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

The referenced actions arise in connection with the administration of the Simon Cohen Real Estate & Management Company [hereinafter "SCREAM"], a New York limited partnership, of which Robert J. Reed is the sole general partner,[1] and the Estate of Simon Cohen is a limited partner holding approximately 56.75%[2] of the outstanding limited partnership units. SCREAM's principal assets are (i) a leasehold interest in certain property located in Bethpage, New York, which SCREAM in turn subleases to Mid–Island Hospital, Inc. [hereinafter "Mid–Island Hospital"], and (ii) a promissory note of Mid–Island Hospital evidencing an obligation of approximately $1.8 million.

The earlier-filed of the referenced actions ["the 90–CV–2795 action"] is brought derivatively against Mr. Reed by Robert Cohen, the trustee for the holder of certain limited partnership units in SCREAM, and alleges, inter alia, a breach of fiduciary duty by Reed, and violations of the Racketeer Influenced and Corrupt Organizations Act ["RICO"]. The RICO counts allege predicate acts of mail fraud and securities fraud.

The later-filed of the referenced actions ["the 94–CV–241 action"], was commenced by Mr. Reed in the Supreme Court of the State

---

1. Reed also holds a limited partnership interest in SCREAM.

2. The parties disagree whether the Estate owns 56.75%, or 59%, of SCREAM's outstanding limited partnership units. The Court's use of the lower percentage figure within this Memorandum and Order is not intended to suggest that the Court has made any factual findings in this regard, or that the Court considers the difference between the two figures to be, in any way, material to the legal issues at hand.

of New York, County of Nassau, and removed to this Court by Mr. Cohen. This action seeks, among other things, a declaratory judgment concerning the validity of an amendment to the SCREAM Articles of Limited Partnership, dated October 19, 1993, and the appropriateness of a proposed agreement for the sale of the principal assets of SCREAM.

Pending before the Court are three principal applications in connection with these actions; one comes from the 94–CV–241 action, while the other two come from the 90–CV–2795 action. First, Mr. Reed moves to remand the 94–CV–241 action to the State court from which it was removed. Second, Mr. Cohen seeks to supplement his complaint in the 90–CV–2795 action to allege a federal securities fraud claim in connection with the same conduct that is the subject of the 94–CV–241 action. Last, Mr. Reed cross-moves to dismiss or to stay the 90–CV–2795 action in deference to ongoing State-court proceedings involving the Estate of Simon Cohen, the largest unitholder in SCREAM.

For the reasons that follow, the Court remands the 94–CV–241 action to the State court from which it was removed. With respect to the 90–CV–2795 action, the Court grants Cohen's motion to supplement his complaint to allege a federal securities fraud claim, and denies Reed's cross-motion to dismiss or to stay this case.

## BACKGROUND

SCREAM is the holder of a leasehold interest in property that it subleases to Mid-Island Hospital. Under the sublease, Mid-Island Hospital initially was required to pay all of its profits as rent to SCREAM. This arrangement began in 1956 when Simon Cohen, a predecessor to SCREAM, acquired a failing hospital construction project from a group of promoters that included Dr. William B.F. Werner.[3] Mr. Cohen agreed to complete construction of the hospital and to lease it to the original promoters in return for the entire fee interest in the property, including the structures and improvements situated

thereon. This arrangement was necessary because Dr. Werner held a license from the New York State Board of Health that authorized him to operate the Mid–Island Hospital. Later, Simon Cohen sold his fee interest in the hospital to the Hebrew Institute of Long Island and retained a leasehold interest in the property under which he paid a fixed annual rent. After the sale, Mid–Island Hospital subleased the property from Simon Cohen and continued to pay Mr. Cohen all of its profits as rent.

Shortly thereafter, Mr. Cohen sold limited partnership interests in the leasehold to his family members and friends, including his son, Robert Cohen. The resulting limited partnership, SCREAM, became the holder of the leasehold.

On January 1, 1987, Robert J. Reed, SCREAM'S general partner, acting on behalf of SCREAM, entered into a new sublease with Mid–Island Hospital, which required the hospital to pay SCREAM a fixed annual rent instead of an annual rental amount determined by reference to its profits. A little more than one year later, upon receiving authorization from the New York State Department of Health to transfer his license to a corporation that would operate the hospital, Dr. Werner began taking steps to incorporate Mid–Island Hospital. According to Robert Cohen, Reed and Werner entered into a "transfer agreement" in February 1988, which provided that (1) a corporation would be formed for the purposes of operating Mid–Island Hospital (the "Hospital Corporation"), and (2) Dr. Werner would transfer his license to operate the hospital to the corporation in exchange for 100 percent of its shares. Cohen alleges that, pursuant to the terms of this "transfer agreement," Dr. Werner was immediately required to sell back these shares to Reed, in his capacity as general partner of SCREAM, for $250,000.

The hospital was incorporated in 1989, but Werner did not transfer his shares back to the limited partnership. Instead, Werner sold five percent of his interest in the Hospital Corporation to Reed, acting in an individ-

---

**3.** Werner originally was named as a codefendant in this action. By Memorandum and Order dated May 5, 1992, the remaining claims against Werner were dismissed in their entirety. *See Cohen v. Reed,* 90–CV–2795 (ERK) (E.D.N.Y. May 5, 1992) (Korman, J.).

ual capacity, and entered into a new agreement with Reed, which provided that Werner would sell the remainder of his shares back to the corporation.

The 90–CV–2795 action followed. In this action, plaintiff Robert Cohen, bringing suit derivatively on behalf of SCREAM, alleges that Reed's aforesaid conduct violated the Racketeer Influenced and Corrupt Organizations Act ["RICO"], 18 U.S.C. § 1962(a), (c). Cohen further asserts against Reed claims for fraud and breach of fiduciary duty. Cohen seeks an accounting and injunctive relief under his common-law claims, and money damages with respect to his RICO count.

This, however, does not end the controversy between the parties concerning Reed's conduct with respect to SCREAM. By document dated October 19, 1993, Reed amended SCREAM's Articles of Limited Partnership to authorize the general partner, with the consent of limited partners holding at least 25% of the capital of the partnership, to sell and to convey title to any and all assets of the partnership, including a leasehold interest. This amendment would serve to expedite the proposed sale of SCREAM's leasehold interest in the property occupied by Mid–Island Hospital, and the note held by SCREAM in connection therewith. Reed alleges that he properly executed this amendment with the written concurrence of limited partners holding in excess of 25% of the capital of the partnership contributed by limited partners, and with his own concurrence, in his capacity as "Designated Voting Limited Partner" on behalf of all limited partners.

In the furtherance of this plan, SCREAM mailed to each of its limited partners a "Memorandum of Sale," dated September 30, 1993, reporting an agreement for the sale of the leasehold and note to Preferred Health Network [hereinafter "PHN"] for $2,600,000. This Memorandum of Sale reported that closing would occur as soon as practicable upon completion of the partnership amendment, approval of the sale, and the procurement of a court order.

Robert Cohen then sought to enjoin the foregoing proposed transaction by moving before the Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, for a temporary restraining order and a preliminary injunction. In response to Cohen's application, counsel for Reed appeared *ex parte* on November 18, 1993 before the Honorable C. Raymond Radigan, the Nassau County Surrogate presiding over the Estate of Simon Cohen. In connection with this appearance, Surrogate Radigan made the following statement for the record:

Let the record then indicate that the Court does not want to interfere with any Federal action but at the same time we do have a procedure under the Surrogate's Court Procedure Act dealing with transfers of action from the Supreme Court over to the Surrogate's Court where the Surrogates give some guidance to a Judge regarding the status of proceedings pending in our court and pursuant to *Matter of Suchoff* the Court is able to advise the other courts of the status of proceedings within our court and whether or not matters ought to be stayed or whether or not matters should [sic] be transferred, etc. But it is merely as guidance and by way of guidance there is presently before this court a proceeding for the sale of the estate's interest in SCREAM and the fiduciaries have before the Court an application for the Court to consider a sale not only of the estate's interest but they have found that it's in the best interests of the estate and all parties concerned that the sale include all of the entities, SCREAM and hospital's interest. The Court has indicated to all parties concerned that this Court only has jurisdiction over the portion of SCREAM that is owned by the estate. The Court has been advised that the attorneys are going to commence an action in the Supreme Court in order to get the global relief so that there will be jurisdiction over those parties that the Court presently doesn't have jurisdiction over because they do not have an interest in the estate. That is, the other limited partners and other interested parties in the overall sale of the entity. The Court has advised counsel that if that action is commenced that I will send to have the matter transferred over to me as a Su-

preme Court Justice and then I would have jurisdiction over all of the necessary parties, subject, of course, to any motions that the parties may make once they are made parties to the proceedings.

Sullivan Aff., Ex. D, at 3–4 (94–CV–241 docket # 4, E.D.N.Y. Feb. 15, 1994). Citing the foregoing transcript excerpt, Judge Korman denied Robert Cohen's application on the condition that Surrogate Radigan undertake the indicated procedure. *Cohen v. Reed*, 90–CV–2795 (E.D.N.Y. Nov. 19, 1993) (order denying preliminary injunction).

On November 19, 1993, Reed, acting both on his own behalf, and derivatively on behalf of SCREAM, commenced a declaratory judgment action in the New York State Supreme Court, County of Nassau. This action seeks a declaration of the validity of the Amendment to SCREAM's Articles of Limited Partnership, dated October 19, 1993, and the proposed sale of SCREAM's principal assets. The action also requests a declaration of the propriety of Reed's entrance into the proposed contract for the sale of SCREAM's principal assets. Finally, the action seeks a declaration (i) dissolving SCREAM pursuant to New York State partnership law, (ii) authorizing the proposed sale in question, and (iii) directing the subsequent liquidation of the partnership.

On January 17, 1994, Robert Cohen filed a notice of removal to relocate this Nassau County Supreme Court action to this Court, where it was assigned the case number 94–CV–241.[4]

Finally, on February 7, 1994, Robert Cohen[5] moved for leave to serve a supplemental complaint in the 90–CV–2795 action. The proposed supplemental complaint assails the same conduct that is the subject matter of the 94–CV–241 action. Specifically, Cohen now alleges that Reed failed to disclose certain material facts to the limited partners in connection with the proposed sale to PHN of the leasehold and note, and that said conduct violates section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder.

## DISCUSSION

### I. 94–CV–241 Action: Motion to Remand to State Court

Reed moves to remand the 94–CV–241 action to the State court from which it was removed, and sets forth several arguments in support of his application. First, he contends that the declaratory judgment complaint at issue fails to raise a federal question. Second, he asserts that Cohen failed to bring his notice of removal within the applicable statutory period. Finally, he contends that the Court should decline to exercise supplemental jurisdiction over this action in view of the integrated proceedings to be held before the Surrogate, acting as a justice of the State supreme court.

Because the proposed sale of SCREAM's principal assets involves many of the same factual intricacies that are before this Court in the 90–CV–2795 action, the Court may properly assert supplemental jurisdiction over the declaratory judgment complaint. *See* 28 U.S.C. § 1367(a).[6] Nevertheless, in accordance with the federal removal statute, the Court deems it appropriate to remand this matter to the State court from which it was removed.

■ Three independent bases support the remand of this action. First, Cohen has failed to obtain the consent of his codefendants to the removal of this case. It is well

---

4. A notice of removal filed by Robin Immerman, who is also a limited partner of SCREAM, was subsequently withdrawn.

5. It should be noted that Robert Cohen is neither a co-executor of the Estate of Simon Cohen, nor a beneficiary of this Estate pursuant to his father's will.

6. 28 U.S.C. § 1367(a) provides in pertinent part:
   Except as provided in [28 U.S.C. § 1367(b) and (c)] or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

established that in order for an action to be removed to federal court, all of the codefendants must consent to removal. *See* 14A Charles A. Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3731, at 504 (2d ed. 1985). Cohen fails to make the requisite showing of consent. With respect to this matter, one of Cohen's codefendants, Robin Immerman, has expressly repudiated her consent to joinder in the removal petition, and there is some evidence that she did not understand that her designation of Robert Cohen as her attorney-in-fact pursuant to a power of attorney would result in her joinder as a principal to the notice of removal. In view of this manifestation of dissent among the codefendants concerning the instant application for removal, and the absence of any separate and independent claim by Robert Cohen that would support his unilateral removal of this action to federal court, *see* 14A Wright, Miller & Cooper, *supra*, § 3731, at 507, this case should be remanded.

A second basis for remanding this action results from Cohen's failure to file his notice of removal within the thirty-day period prescribed by 28 U.S.C. § 1446(b). Section 1446(b) provides, in pertinent part:

> The notice of removal of a civil action or proceeding shall be filed *within thirty days after the receipt by the defendant, through service or otherwise,* of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (emphasis added). In the instant action, Robert Cohen's counsel acknowledged receipt of the State-court complaint by letter dated December 9, 1993, but did not file the notice of removal until January 17, 1994—9 days after the 30–day statutory period had expired. The letter acknowl-

edging receipt of the complaint in the State-court action reads as follows:

December 9, 1993

Peter Sullivan, Esq.

Speno Goldman Goldberg Steingart & Penn, P.C.

300 Old Country Road

Mineola, NY 11501

RE: *Reed v. Wolff, et al.*
     Index No. 93–032058

Dear Mr. Sullivan:

Enclosed please find the Statement of Service by Mail and Acknowledgment of Receipt by Mail of Summons and Verified Complaint. I have executed the acceptance of service on behalf of my client Robert Cohen.

This is to confirm our agreement that I will move, answer or otherwise respond on behalf of my client on or before January 17, 1994. Thank you for your cooperation.

Should you have any questions, please do not hesitate to contact my office.

Very truly yours,

KATCH, SENDER & WASSERMAN P.C.

Harvey Sender (signed)

Sullivan Aff., Ex. A (94–CV–241 docket # 4, E.D.N.Y. Feb. 15, 1994).

Cohen argues that by agreeing to allow him until January 17, 1994 to "move, answer or otherwise respond" to the complaint, Reed waived his right to object to Cohen's failure to file the notice of removal within the prescribed thirty-day period. Alternatively, Cohen argues that Reed should be equitably estopped from asserting that the statutory period has expired.

While the Court recognizes that the thirty-day time frame for removal prescribed by 28 U.S.C. § 1446(b) may be extended through waiver or estoppel, *see Nicola Prods. Corp. v. Showart Kitchens, Inc.,* 682 F.Supp. 171, 173 (E.D.N.Y.1988), the Court finds these grounds to be unavailable under the facts of this case.[7] The above-referenced letter fails

---

7. The court also rejects Cohen's argument, founded upon *Love v. State Farm Mut. Auto. Ins. Co.,* 542 F.Supp. 65, 68 (N.D.Ga.1982), that the

30–day filing requirement under 28 U.S.C. § 1446(b) should not commence until process has been served upon the defendant, regardless

to recite any agreement between the parties to enlarge Cohen's time frame to file a notice of removal to federal court. One would expect any representation by Reed's counsel to the contrary to be integrated within the document at issue. Further, the weight of authority within this district holds that an extension of time to respond to a complaint, in the absence of extraordinary circumstances, will not extend a defendant's time to file a notice of removal to federal court. *See Nicola Prods. Corp.*, 682 F.Supp. at 172–73 (Plaintiff was not estopped to assert the 30–day filing period to defeat removal by virtue of its agreement to hold in "abeyance" all proceedings and to extend the defendants' time to respond to the complaint, because reliance upon such agreements for estoppel purposes was unreasonable.); *see also Somlyo v. J. Lu–Rob Enters.*, 932 F.2d 1043, 1046 (2d Cir.1991) ("[A]bsent a finding of waiver or estoppel, federal courts rigorously enforce the . . . thirty-day filing requirement [of 28 U.S.C. § 1446(b)."). This rule is in consonance with the unambiguous language of 28 U.S.C. § 1446(b), which demonstrates congress's intent that "[t]he time limitations in [28 U.S.C. § 1446(b) be] mandatory and . . . strictly construed in accordance with the computation principles in Federal Rule of Civil Procedure 6." 14A Wright, Miller & Cooper, § 3732, at 527. The Court therefore finds Cohen's assertion of reliance to be unreasonable under the circumstances. Thus, Cohen may not invoke the doctrines of estoppel and waiver in the case at bar to excuse his failure to remove this action on a timely basis.

The Court further finds that, in view of the complex procedural history of the dispute between the parties, and the exclusive composition of state-law claims within the 94–CV–241 action, it would be improvident to

allow this action to be litigated in this federal forum. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 351–53, 357, 108 S.Ct. 614, 619–20, 623, 98 L.Ed.2d 720 (1988); 14A Wright, Miller & Cooper § 3721, at 502. As earlier discussed, the Nassau County Supreme Court action that is the subject of this motion to remand was filed for the express purpose of consolidating before Surrogate Radigan, in his capacity as a State supreme court justice, all of the issues relating to the sale of SCREAM's principal assets and its subsequent liquidation to the limited partners. This adjudication is in direct furtherance of an important State interest of liquidating the Estate of Simon Cohen, which in addition to holding approximately 56.75% of the limited partnership units in SCREAM, is among the oldest decedent's estates in Nassau County. The remand of this case to State court is therefore necessary under the circumstances to avoid a needless frustration of an area of traditional State concern, and therefore "promote the values of economy, convenience, fairness, and comity." *Carnegie–Mellon Univ.,* 484 U.S. at 353, 108 S.Ct. at 620 (1988); *see also* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.").

Having concluded that the 94–CV–241 action should be remanded, the Court notes that, as a related matter, Reed's counsel has moved for the imposition of sanctions against Cohen's counsel. In support of this application, Reed's counsel points to the notice of removal brought on behalf of Robin Immerman pursuant to a general power of attorney, which appointed Robert Cohen her attorney-in-fact. Immerman subsequently withdrew this notice of removal and repudiated this

of whether the defendant's counsel has acknowledged receiving the complaint. The statutory interpretation suggested in *Love* is contrary to the clear language of the statute, which expressly requires that a notice of removal in a civil action be filed within thirty days *"after the receipt by the defendant, through service or otherwise,* of a copy of the [complaint]." 28 U.S.C. § 1446(b) (emphasis added). The phrase "through service or otherwise" makes clear that Congress did not intend to exclude an uncontroverted acknowledg-

ment of receipt of a complaint by a defendant's counsel from treatment as a triggering event that would cause the thirty-day period to commence. *See Shoemaker v. GAF Corp.,* 814 F.Supp. 495, 498–99 (W.D.Va.1993) (receipt of complaint triggers thirty-day period for removal); *Gates Construction Corp. v. Koschak,* 792 F.Supp. 334, 336 (S.D.N.Y.1992) (same); *Trepel v. Kohn, Milstein, Cohen and Hausfeld,* 789 F.Supp. 881, 883 (E.D.Mich.1992) (same).

power of attorney, and there is some evidence that she was unaware that she was a principal to the notice of removal brought before this Court. While these allegations are not to be taken lightly, the Court is unable to conclude on the basis of the record presently before it that the conduct of Cohen's counsel warrants the imposition of sanctions. Accordingly, Reed's application for sanctions is held in abeyance, pending a subsequent application addressing this issue.

■ Further, the Court notes that under 28 U.S.C. § 1447(c), a federal court, in connection with the remand of a case, "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c); *see Morgan Guar. Trust Co. v. Republic of Palau*, 971 F.2d 917, 923–24 (2d Cir.1992) (noting discretionary nature of award). In view of the Court's determination that subject matter jurisdiction over the removed claim is present pursuant to 28 U.S.C. § 1367, but that a remand to State court is nevertheless appropriate, the Court declines to award costs and attorney's fees on the basis of the record before it. The Court, however, would be willing to revisit this determination should it be established that Cohen's counsel proceeded in bad faith, or negligently, in connection with the notice of removal filed on behalf of Robin Immerman pursuant to a power of attorney in favor of Robert Cohen. Accordingly, the resolution of this issue likewise is held in abeyance pending a further application to this Court.[8]

## II. 90–CV–2795 Action

### A. *Motion by Cohen to Supplement Complaint*

In the 90–CV–2795 action, plaintiff Robert Cohen moves, pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, for leave to supplement his complaint. The factual allegations within the proposed supplement concern essentially the same conduct that is the subject of a declaratory judgment suit in the 94–CV–241 action. Specifically, Robert Co-

hen alleges that Robert Reed, individually and in his capacity as the general partner of SCREAM, in a letter dated October 20, 1993, knowingly misstated and omitted material facts in conjunction with his solicitation of the approval of the limited partners with respect to the proposed sale of the principal assets of SCREAM to PHN. Cohen contests that the proposed sale of SCREAM's assets, in tandem with the planned distribution of the proceeds to the limited partners in complete liquidation of the limited partnership, would constitute a forced sale of his limited partnership interest in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder.

■ "In order for an application to supplement a pleading to be denied, the nonmovant must demonstrate either bad faith on the part of the moving party, the futility of the claims asserted within the application, or undue prejudice to the nonmovant." *Katzman v. Sessions*, 156 F.R.D. 35, 38 (E.D.N.Y. 1994). As to the second of these items, a proposed pleading will be considered futile if it fails to state a claim that could withstand a motion to dismiss. *See S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 42 (2d Cir.1979). Further, a showing of prejudice sufficient to prevent the assertion of a new claim or defense may not be deduced from mere allegations of delay. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993) (citing *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981)). Rather, the relevant inquiry considers "whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [party] from bringing a timely action in another jurisdiction." *Id.; see also id.* ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

---

**8.** Robert Cohen also applies for an extension of time to plead pending the Court's determination of the instant motion to remand. In view of the Court's grant of the motion to remand, and the resulting termination of this Court's jurisdiction with respect to the 94–CV–241 action—except to consider the issues of attorney's fees, costs and sanctions—this application is denied as moot.

■ Turning to the instant application, defendant Reed is unable to make the requisite showing necessary to overcome Rule 15's liberal policy favoring a merit-based resolution of the entire controversy between the parties. First, defendant fails to establish that the plaintiff has moved in bad faith. Second, defendant has not demonstrated that it would suffer undue prejudice if plaintiff's application were granted. Finally, as will be discussed in the next section, Reed is unable to establish that the claim asserted within the supplemental complaint would be futile.[9] Accordingly, Cohen's motion to supplement his complaint is granted.

### B. *Cross–Motions by Reed to Dismiss or to Stay*

Reed cross-moves to dismiss or to stay the 90–CV–2795 action, arguing that this Court should abstain from hearing this case in view of pending State-court litigation.

#### 1. *Younger and Burford Abstention Doctrines*

Reed first contends that the 90–CV–2795 action should be dismissed under either the doctrine set forth by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), or the doctrine first enunciated by the Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

■ Under the *Younger* doctrine, a federal court, as a matter of comity, should abstain from the exercise of jurisdiction where federal review would disrupt (a) a state criminal proceeding, (b) a "state nuisance proceeding[ ] antecedent to a criminal prosecution," or (c) state tax collection. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 816, 96 S.Ct. 1236, 1245–46, 47 L.Ed.2d 483 (1976) (citing *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943)) (other citation omitted).

The *Younger* doctrine also applies to state contempt proceedings, civil actions brought by a State in its sovereign capacity, and civil actions commenced by quasi-governmental organizations that bear a close relationship to proceedings criminal in nature. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (contempt proceedings); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (suit by State to recover welfare payments allegedly fraudulently obtained); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (state proceeding to discipline an attorney). It moreover applies to prevent challenges in federal court "to the processes by which the State compels compliance with the judgments of its courts." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13–14, 107 S.Ct. 1519, 1527, 95 L.Ed.2d 1 (1987).

■ Under the *Burford* doctrine, abstention will be appropriate where the case presents a question of state law in which the exercise of federal review "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1245 (citing *Burford*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)); *see New Orleans Public Service, Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989).

■ The Court finds that neither the *Younger* nor the *Burford* doctrines are applicable to the case at bar. The instant action essentially involves a dispute concerning a fiduciary's conduct with respect to a limited partnership, of which the Estate of Simon Cohen owns approximately a 56.75% interest. While Reed is a co-executor of the Estate of Simon Cohen, this action does not directly call into question his conduct with respect to the Estate. Rather, this action examines his conduct solely with respect to SCREAM, the limited partnership in question. It is quite possible that conduct giving rise to a breach of fiduciary duty, or other basis for liability

---

9. Reed does not argue that Cohen fails to state a cause of action under the Securities Exchange Act of 1934, and Rule 10b–5. Rather, Reed contends that the *entire* 90–CV–2795 action should be either dismissed or stayed pursuant to an abstention doctrine.

with respect to SCREAM, might not transgress any duty owed by Reed to the Estate. Accordingly, the conflict with an important State interest that the *Younger* abstention seeks to avoid is absent. In addition, this action is not founded solely upon state law, but asserts RICO and federal securities fraud claims as well. All other things being equal, the existence of a federal statutory cause of action is a factor that points against *Burford* abstention. *See, e.g., County of Suffolk v. Long Island Lighting Co.,* 907 F.2d 1295, 1308 (2d Cir.1990) (*Burford* abstention not warranted in a RICO suit against an electrical utility); *Evans v. Dale,* 896 F.2d 975, 978–79 (5th Cir.1990) (*Burford* abstention improper in view of existence of securities fraud claims which could not be heard in State court). In light of these circumstances, the Court concludes that this action does not come within the purview of the *Younger* and *Burford* doctrines. Thus, Reed's application to dismiss this action on *Younger* or *Burford* grounds is denied.

## 2. *Analysis under Colorado River Doctrine*

Reed next argues that this action should be dismissed or stayed under the "exceptional circumstances" doctrine first articulated by the Supreme Court in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), on the ground that there is a similar action pending in State court in which the controversies between the parties can be resolved. In addition to the 94–CV–241 action, which as earlier discussed, is being remanded to State court pursuant to this Memorandum and Order and embraces the same factual issues as those set forth within Cohen's supplemental complaint in the 90–CV–2795 action, Reed contends that there is another related action pending between these parties in the Supreme Court of the State of New York, County of Suffolk, that was filed in 1993 under the index number 4333/93 [the "Suffolk County action"]. Reed argues that the maintenance of the 90–CV–2795 action in this federal forum would create duplicate litigation.

Cohen, in turn, argues that abstention is inappropriate in this case insofar as his sup-plemental complaint asserts a claim under section 10(b) of the Securities Exchange Act of 1934, over which there is exclusive federal jurisdiction. Further, he contends that the Suffolk County action has absolutely nothing to do with the assets of SCREAM, but rather concerns two separate limited partnerships. He therefore asserts that a stay or dismissal of the 90–CV–2795 action would deprive him of the sole forum available to litigate his federal claims.

■ In *Colorado River,* the Supreme Court held that while federal courts have a virtually unflagging obligation to hear cases within their jurisdiction, *see Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244, "a federal court could, in exceptional circumstances, abstain where there are concurrent state and federal proceedings." *Sheerbonnet, Ltd. v. American Express Bank, Ltd.,* 17 F.3d 46, 49 (2d Cir.1994) (citing *Colorado River,* 424 U.S. at 813, 96 S.Ct. at 1244), *cert. denied,* —— U.S. ——, 115 S.Ct. 67, 130 L.Ed.2d 23 (1994). The determination of whether exceptional circumstances exist involves an examination of six factors: (1) whether jurisdiction has been assumed over specific property; (2) the inconvenience of the federal forum; (3) the likelihood of piecemeal litigation; (4) the order in which jurisdiction was obtained by the federal forum; (5) whether federal law or state law provides the rule of decision; and (6) whether adjudication in the state-court forum would adequately protect the plaintiff's federal rights. *See De Cisneros v. Younger,* 871 F.2d 305, 307 (2d Cir.1989); *National Casualty Co. v. Jordache Enters.,* 848 F.Supp. 1112, 1116 (S.D.N.Y.1994). "In analyzing these factors, the Supreme Court admonishes that no single factor is necessarily decisive, and that the test 'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *De Cisneros,* 871 F.2d at 307 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983)).

■ Turning to the instant case, the first two factors—the absence of jurisdiction over a *res,* and the convenience of the federal

forum—both point toward the exercise of federal jurisdiction. *See id.* With respect to these factors, the instant federal action is founded upon *in personam* jurisdiction, and the Eastern District of New York appears to be a convenient forum to litigate this action, notwithstanding Reed's desire that all of the claims between the parties be litigated within a single forum.

The third factor, which considers whether piecemeal litigation would be avoided if the federal court abstained, likewise supports the exercise of jurisdiction. In his supplemental complaint, Cohen asserts a federal securities fraud claim pursuant to section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. Under 15 U.S.C. § 78aa, the federal courts have exclusive jurisdiction over claims arising under the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78aa. Accordingly, if this action were stayed or dismissed pending the resolution of the State-court action, Cohen would not be able to litigate his federal securities fraud claim, and would have to return to federal court once more. Thus, abstention would not serve to avoid piecemeal litigation under the circumstances of this case.

Reed cites *Lorentzen v. Levolor Corp.,* 754 F.Supp. 987 (S.D.N.Y.1990) for authority that the inclusion of a claim within a complaint for which there is exclusive federal jurisdiction will not necessarily prevent abstention. *Lorentzen,* however, is contrary to the prevailing view within this circuit which holds that the presence of a claim for which there is exclusive federal jurisdiction weighs heavily in favor of the exercise of federal jurisdiction. *See Finkielstain v. Seidel,* 857 F.2d 893, 896 (2d Cir.1988); *Andrea Theatres, Inc., v. Theatre Confections, Inc.,* 787 F.2d 59, 63–64 (2d Cir.1986); *Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 284 (S.D.N.Y.1988); *Ash v. Richard J. Lynch & Co.,* 644 F.Supp. 315, 317–18 (E.D.N.Y.1986). Indeed, *Lorentzen* is distinguishable in light of its unusual posture, in which the district court found that because of the imminence of an arbitrator's

decision with respect to the state-law claims, it did not appear that the imposition of a stay would unduly delay the progress of the plaintiff's 10b–5 claim. *See Lorentzen,* 754 F.Supp. at 994–95. Such circumstances are absent from the case at bar.

The fourth factor considers the order in which jurisdiction was obtained by the federal and state fora, and the relative progress of the proceedings. Reed points out that, in contrast to the federal securities fraud claim upon which there has been no discovery, Surrogate Radigan, who would preside over the State-court proceeding as a justice of the Nassau County Supreme Court, has gathered information relative to SCREAM's proposed liquidation during the last five years. This factor thus points in favor of abstention. It should be noted, however, that Reed does not assert that the proceedings before Surrogate Radigan are anywhere near completion. Indeed, litigation in the State court concerning SCREAM's proposed liquidation was enjoined upon Cohen's removal of the 94–CV–241 action to this Court. *See* 28 U.S.C. § 1446(d). Therefore, while this factor points towards abstention, it does not weigh heavily in that direction.

The fifth factor considers whether federal law or state law provides the rule of decision. In view of the exclusive jurisdiction conferred upon the federal courts over claims brought under Rule 10b–5, this factor weighs heavily toward the exercise of federal jurisdiction. Indeed, the Second Circuit of Appeals has explained that where a federal court has exclusive jurisdiction over a claim, "abstention would run counter to Congress' determination, reflected in grants of exclusive federal jurisdiction, that federal courts should be the primary fora for handling such claims. The grant of such jurisdiction could be seriously hampered if federal courts exercised discretionary power to await the outcome of related state court proceedings." *Andrea Theatres,* 787 F.2d at 63; *see Finkielstain,* 857 F.2d at 896.[10] Thus, the exis-

10. Although, the Second Circuit Court of Appeals has invoked this concern without resorting to the traditional six-factor analysis to affirm a district court's denial of a stay, *see, e.g., Finkielstain,* 857 F.2d at 896 (reversing district court on other grounds), it is not entirely clear whether the Court of Appeals considers the existence of exclusive federal jurisdiction to operate as a *per se* bar against abstention in *all* circumstances. *See, e.g., Andrea Theatres,* 787 F.2d at 63–64 (addressing

tence of a federal securities fraud claim in the case at bar counsels strongly toward the exercise of federal jurisdiction.

Finally, turning to the sixth factor, the inadequacy of the State-court forum to protect the plaintiff's federal rights likewise weighs strongly in favor of the retention of this case. To reiterate, a stay of the instant action would deprive Cohen of his present ability to litigate his federal securities fraud claim until the State-court action was resolved. Such would be inconsistent with congress's policy choice to vest the federal courts with exclusive jurisdiction over this matter. *See Andrea Theatres,* 787 F.2d at 62–63. Thus, this factor also weighs heavily in favor of the exercise of federal jurisdiction.

As can be observed from the foregoing discussion, although the sequence in which jurisdiction was assumed weighs in favor of abstention, each of the remaining factors that comprise the exceptional circumstances analysis points toward the exercise of federal jurisdiction. Indeed, the ubiquitous effect of the federal courts' exclusive jurisdiction over 10b–5 claims tips the scales decidedly in favor of retaining this case within a federal forum. Accordingly, Reed's motion to dismiss or to stay this action under the *Colorado River* doctrine must be denied.

### CONCLUSION

In accordance with the foregoing, the Court enters the following orders in the instant actions:

### 94–CV–241 Action

(1) Reed's motion to remand the 94–CV–241 action is GRANTED.

(2) Reed's motion for the imposition of sanctions upon Robert Cohen's counsel, and for the reimbursement of the attorney's fees and litigation costs relating directly to the 94–CV–241 action, is held in abeyance pending a subsequent application to this Court documenting the asserted fees and costs, and further addressing the allegations of miscon-

duct concerning the notice of removal filed on behalf of Robin Immerman. The filing of these applications, including the responsive papers thereto, shall be made in accordance with the indigenous rules of this Court governing the filing of civil motions.

(3) Pursuant to 28 U.S.C. § 1447(c), the Clerk of this Court is directed to mail a copy of this Memorandum and Order to the Clerk of the Supreme Court of the State of New York, County of Nassau.

### 90–CV–2795 Action

(4) Cohen's motion to supplement his complaint is GRANTED.

(5) Reed's motion to dismiss or to stay this action is DENIED.

SO ORDERED.

---

relative convenience of federal and state forums, absence of assumed jurisdiction over any *res* or property, and the limited progress of the State-court suit); *Lorentzen,* 754 F.Supp. at 994–95 (stay granted despite pendency of 10b–5 claim);

*but see Andrea Theatres,* 787 F.2d at 62 ("Indeed, abstention is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts.").