## In re ESTATE OF Charles L. TABAS, Deceased.

**Petition of Harriette S. TABAS, Richard S. Tabas, Nancy C. Tabas and Gerald Levinson, Executors of the Estate of Charles L. Tabas, Deceased, for a Citation to Show Cause Why Daniel M. Tabas Should Not be Removed as Managing Partner and a Receiver Appointed in His Stead, to Preserve and Manage Tabas Enterprises.**

Civ. A. No. 94–7682.

United States District Court, E.D. Pennsylvania.

March 7, 1995.

Richard Sprague, Philadelphia, PA, for petitioner.

Paul Rosen, Philadelphia, PA, for respondent.

## MEMORANDUM

DALZELL, District Judge.

### I. *Introduction*

This action is yet another skirmish between the warring factions of the Tabas family.[1] On November 30, 1994, Harriette S. Tabas, widow of Charles L. Tabas, and others (collectively "Harriette") filed a "Petition . . . for a Citation to Show Cause why Daniel Tabas Should Not Be Removed as Managing Partner and a Receiver Appointed in his Stead, to Preserve and Manage Tabas Enterprises" (the "Petition") in the Pennsylvania Orphans' Court. The Petition alleges that Daniel M. Tabas ("Daniel") has engaged in, *inter alia,* "ongoing waste on a massive scale, dissipation of assets, [and] fraud and mismanagement of Tabas Enterprises." *See* Petition at 1. It asks the Orphans' Court to appoint a receiver who would take control of and manage Tabas Enterprises.

On December 22, 1994, Daniel filed a Notice of Removal to this Court. By Order dated January 10, 1995, we questioned our jurisdiction to proceed in this action, noting that the Petition does not appear to present a federal question, and that the adverse parties are not citizens of different states. We directed the parties to brief the issue of jurisdiction, and the parties have submitted excellent briefs to guide our judgment.[2]

The sole question that this Memorandum addresses is whether Harriette may remove the Petition to federal court. We adhere to our earlier decision in *Chase v. Auerbach,* No. 94–5892, 1994 WL 590588 (E.D.Pa. October 26, 1994), and conclude that no statute authorizes the Petition's removal. We will therefore remand the action to the Pennsylvania Orphans' Court pursuant to 28 U.S.C. § 1447(c).[3]

---

1. For a more elaborate description of the operations of Tabas Enterprises and the Dickensian dispute between these parties, see *Tabas v. Tabas,* 47 F.3d 1280, 1282–1287 (3d Cir.1995) (*in banc* ).

2. On January 20, 1995, Harriette also filed a motion to remand this action.

3. We also note that Harriette's petition is (to quote Yogi Berra) "deja vu all over again". *Bartlett's Familiar Quotations* 754 (16th ed. 1992). Harriette first sought a receiver for Tabas

## II. *Analysis*

Daniel advances four alternative arguments in support of removal. First, he argues that the language of the Petition incorporates the federal RICO action that the Third Circuit recently decided *in banc, Tabas v. Tabas,* 47 F.3d 1280, 1282–87 (3d Cir.1995) (*in banc*), and therefore that the Petition itself poses a federal question. Second, he contends that the supplemental jurisdiction statute, 28 U.S.C. § 1367, creates federal jurisdiction where there otherwise would be none. Third, he claims that the Petition is in fact an artfully pleaded federal claim. Daniel relies on the All Writs Act, 28 U.S.C. § 1651, as his final basis of jurisdiction. We shall consider these arguments in turn.

### 1. *The Plain Language of the Petition*

Daniel first argues that Harriette has "made a disputed question of federal law (RICO) a necessary element of the Petition." Daniel Tabas's Memorandum of Law in Support of Notice of Removal and Motion for Consolidation at 1–2. For support, Daniel points to language in the Petition that refers to the RICO action. For example, the Petition alleges "fraud, dishonesty, [and] violations of state *and federal* law", Daniel's Memorandum of Law at 2. The Petition also describes "the RICO case" and instructs that the conduct of Daniel as alleged in the federal action, "if true, clearly establishe[s] Daniel Tabas' fraud against the Estate in connection with Tabas Enterprises", *id.*

■ In essence, Daniel argues that the Petition would force the Orphans' Court to decide the RICO claim (and, hence, that the Petition should be in federal court instead of state court). We reject this argument. The Supreme Court has instructed:

> Enterprises on March 4, 1991. *See* Exhibit A to the Motion for Remand of Harriette S. Tabas, Richard S. Tabas, Nancy Tabas and Gerald Levinson, Executors of the Estate of Charles L. Tabas, Deceased. Daniel objected to the Petition, and the Orphans' Court found the Petition "premature" and sustained the objections.

4. We note, moreover, that the Petition does not re-allege conduct originally pleaded in Complaint. Harriette filed her RICO complaint in

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

*Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987) (footnotes and citation omitted). The Petition only alleges that Daniel has engaged in fraud in the summer of 1994.[4] Fraud is an element, but only one element, of RICO, *see Tabas,* 47 F.3d at 1290–91, and without more cannot transform the Petition into a federal claim. The Orphans' Court will not need to address the RICO claim when it decides the merits of the Petition.

We also note that the remedy that Harriette seeks in the Petition—the appointment of an receiver to manage Tabas Enterprises—is inherently prospective, since the receiver would seek to "preserve and manage" Tabas Enterprises. Petition at 25. The RICO claim is inherently retrospective. It only seeks trebled money damages for past fraudulent conduct.

We do not believe that our analysis here depends upon a finding of closed-ended or open-ended RICO continuity. *See Tabas,* 47 F.3d at 1294–97. Even if the alleged squandering of assets in the summer of 1994 ultimately is relevant both to the Petition and to the RICO claim, that overlap should not affect the RICO claim in any substantive way.[5] The presence of a receiver might affect the amount of damages at issue in the RICO

March, 1991, in which she alleged fraudulent conduct that occurred before that date. Her Petition alleged fraudulent conduct in the summer of 1994.

5. Admittedly there will be a degree of overlap between many RICO claims and many fraud claims, especially now that "garden-variety" fraud claims can, in this Circuit, form the basis of RICO actions. *See Tabas,* 47 F.3d at 1290 & n. 15.

claim, but his functions would not turn upon a finding of a RICO violation.

We find that the Petition does not pose a federal question despite the references in it to the pending federal action.

2. *The Supplemental Jurisdiction Statute*

Daniel next argues that we may consolidate the Petition with the RICO claim because the similarity of claims, parties, and transactions bring the Petition within the supplemental jurisdiction of this Court. This argument has the inquiry backwards.

■■■ As we held in *Chase v. Auerbach,* No. 94–5892, 1994 WL 590588 (E.D.Pa. October 26, 1994), the supplemental jurisdiction statute does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal action. Although such an approach would have the benefits of efficiency, it runs aground on a close reading of the statute, which states:

> [I]*n any civil action of which the district courts have original jurisdiction,* the district courts shall have supplemental jurisdiction over all other claims that are so related to claims *in the action* within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a). On its face the statute distinguishes between actions and claims. Section 1367 allows plaintiffs to bring federal claims in federal court even though combined with state-law claims that would not otherwise be within a federal court's jurisdiction.[6] The statute is not, however, an independent source of removal jurisdiction. To remove the Petition from state court to federal court, Daniel must first find a federal claim in the Petition itself (which we have concluded is not present). An already-existing federal action cannot provide the mechanism for removal of a non-removable state-court action.

Daniel quotes *Cohen v. Reed,* 868 F.Supp. 489, 494 (E.D.N.Y.1994), to support his construction of § 1367. In *Cohen,* the plaintiff filed a RICO action in federal court in 1990 and a state-court action in state court in 1994. The defendant removed the state-court action, and the plaintiff moved to remand. *Id.* at 491–93. In dicta,[7] Judge Seybert wrote:

> Because the [state-court action] involves many of the same factual intricacies that are before this Court in [the federal action], the Court may properly assert supplemental jurisdiction over the [state-court action]. *See* 28 U.S.C. § 1367.

*Id.* 868 F.Supp. at 494 (footnote omitted). In essence, Judge Seybert concluded that § 1367 is itself a source of removal jurisdiction over and beyond § 1441. Although we recognize that the Circuits are still interpreting the precise scope of § 1367, *see, e.g., Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 785, 787–91 (3d Cir.1995), we doubt that Congress sought to alter the rule that "[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc., supra,* 482 U.S. at 392, 107 S.Ct. at 2429 (footnote omitted).

■■■ Daniel also cites *Simcox v. McDermott Int'l., Inc.,* No. H–92–3014, 1993 U.S.Dist. LEXIS 18302, at *9–*10. In that case, Judge Crone consolidated two removed actions—one with federal jurisdiction, the other without—and then, two weeks later, declined to remand the action that lacked federal jurisdiction. She wrote:

> Upon consolidation in this court, two previously separate cases became one. Therefore, in resolving questions of jurisdiction, the initial removability of the later filed case no longer is determinative; the provisions of 28 U.S.C. § 1367 must be considered as well. For supplemental jurisdiction to attach, the subsequent case need not be independently removable, if it forms

---

6. Harriette's federal complaint presents an example of the operation of § 1367. Counts 3–6 of that complaint are state-law claims between non-diverse parties. The RICO claim provides federal jurisdiction over the state law claims, even though we would have no jurisdiction over those claims in the absence of the RICO claim.

7. The quotation is dicta because the district court remanded the 1994 action on other grounds. *See id.* 868 F.Supp. at 494–95.

part of the same controversy as the prior case.

*Id.* We believe the court in *Simcox* committed·a clear error of law when it entered an order of consolidation before ascertaining its jurisdiction. 28 U.S.C. § 1446(c)(4) ("The United States district court in which [a] notice [of removal] is filed shall examine the notice promptly. If it clearly appears on the face of the notice ... that removal should not be permitted, the court shall make order for summary remand."). It is constitutionally improper for a federal court to act in the absence of jurisdiction. *See, e.g., Steel Valley Auth. v. Union Switch and Signal Div.,* 809 F.2d 1006, 1010 (3d Cir.1987) ("[T]he lack of subject matter jurisdiction voids any decree entered in a federal court...."). In *Simcox,* the court's consolidation order was in our view a nullity, because it lacked jurisdiction to take any action in the unremovable state-court action. In the absence of jurisdiction to proceed in the unremovable action, the court should have remanded the action.[8]

### 3. The Artfully Pleaded Federal Claim Doctrine and the All Writs Act

■ Finally, neither the "artfully pleaded federal claim" doctrine nor the All Writs Act apply to this action. The "artfully pleaded federal claim" requires a federal claim, *see Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 397 n. 9, 101 S.Ct. 2424, 2427 n. 9, 69 L.Ed.2d 103 (1981); *In re "Agent Orange" Product Liability Litigation,* 996 F.2d 1425, 1430 (2d Cir.1993), *cert. denied sub nom. Ivy v. Diamond Shamrock Chem. Co.,* —— U.S. ——, 114 S.Ct. 1125, 127 L.Ed.2d 434 (1994), and we have concluded above that the Petition simply does not present a federal claim. For similar reasons,[9] we also find that Harriette's quest for a receiver does not warrant the "extraordinary" power that the All Writs Act confers on courts. *See Pennsylvania Bureau of Correction v. Unit-*

ed States Marshals Service, 474 U.S. 34, 43, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985) ("Although the Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate").

### III. Conclusion

The Petition alleges that Daniel engaged in fraud in the summer of 1994. It does not present a federal claim. As such, it does not belong in federal court.[10]

---

8. The court ultimately dismissed the action on *forum non conveniens* grounds. *See Simcox v. McDermott Int'l., Inc.,* 152 F.R.D. 689 (S.D.Tex. 1994).

9. If the Orphans' Court chooses to appoint a receiver, we assume that the receiver will "have sole and exclusive power and authority *hereafter* to collect, manage, invest, [and] maintain" the assets of Tabas Enterprises". Petition (Proposed

Order) (emphasis added). Retrospective relief will not affect the claims in the federal action.

10. We also shall decline Harriette's request for costs and sanctions pursuant to 28 U.S.C. § 1447(c) and Federal Rule of Civil Procedure 11. We do not find Daniel's conduct here to warrant sanction.