HUDGINS MOVING & STORAGE CO., INC., on behalf of itself and all those similarly situated in the state of Tennessee, Plaintiff,

v.

AMERICAN EXPRESS COMPANY, and American Express Travel Related Services Company, Inc., Defendants.

No. 3:03–0614.

United States District Court,
M.D. Tennessee,
Nashville Division.

Nov. 19, 2003.

Charles F. Barrett, Barrett Law Office, Nashville, TN, for plaintiff.

Barbara Jean Moss, John K. Walkup, Wyatt, Tarrant & Combs, Nashville, TN, for defendants.

## MEMORANDUM

TRAUGER, District Judge.

This case comes before the court on plaintiff Hudgins Moving & Storage Co., Inc.'s (Hudgins) Motion to Remand to the Circuit Court of Davidson County, Tennessee, from which it was removed by Defendants American Express Company and American Express Travel Related Services Company, Inc. (collectively, American Express). (Docket No. 8) Hudgins filed this action in the Circuit Court of Davidson County on June 3, 2003. (Docket No. 1, Ex. A) American Express removed the action on July 8, 2003, on grounds that this court has both diversity and subject matter jurisdiction over Hudgins's complaint. (Docket No. 1) Hudgins has now moved to remand the action to state court. American Express has responded in opposition (Docket No. 12), and Hudgins has replied (Docket No. 15). For the reasons stated herein, Hudgins's motion to remand will be granted.

## I. BACKGROUND

Hudgins Moving & Storage Company is a Tennessee corporation with its principal place of business in Davidson County, Tennessee. (Docket No. 1, Ex. A ¶ 1) American Express Company is a New York corporation, and American Express Travel Related Services Company, Inc., is a Delaware corporation. Both American Express Company and American Express Travel Related Services Company have their principal place of business in New York City. (Docket No. 1, Ex. A ¶¶ 2–3) Hudgins claims that American Express conducts continuous and substantial business in Tennessee. (*Id.*)

Hudgins filed this action against American Express in Davidson County Circuit Court on behalf of itself and a proposed class of all other similarly situated businesses within the state of Tennessee. Hudgins claims that American Express, by requiring businesses that accept its charge cards to also accept American Express credit and debit cards at what Hudgins terms "grossly supracompetitive prices," has created a tying agreement that is an illegal restraint of trade under Tennessee law. (Docket No. 1, Ex. A ¶¶ 8–10) For every purchase made on a credit card, a merchant pays a discount fee to the credit card company that is deducted from the amount of the sale. (Docket No. 1, Ex. A. ¶ 14) The discount fee is determined by multiplying the amount of the charge in question by a percentage discount rate established by the credit card company. (*Id.*) Hudgins claims that the typical discount rate, used by MasterCard and Visa, the dominant issuers of credit cards in Tennessee, is approximately 1.9 percent. (*Id.*, ¶ 18) American Express requires merchants that accept its credit cards to do so at a three-percent discount rate. (*Id.* ¶ 14)

But for the existence of the tying agreement requiring merchants who accept American Express's charge cards to accept its credit and debit cards as well, Hudgins argues that Tennessee merchants would decline to accept American Express credit and debit cards, or would do so only at competitive rates. (Docket No. 1, Ex. A ¶¶ 34–35) Hudgins's complaint brings claims on these grounds against American Express under the Tennessee Trade Practices Act, Tennessee Code Annotated § 47–15–101, *et seq.*, and the Tennessee Consumer Protection Act, Tennessee Code Annotated § 47–18–101, *et seq.*, and seeks compensatory and punitive damages, attorney's fees and costs, and injunctive relief. (Docket No. 1, Ex. A ¶¶ 58–68)

American Express removed the case to this court, claiming both federal question

jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332. (Docket No. 1) American Express notes that, in May 2003, a class action complaint bringing federal antitrust claims under the Sherman Act, 15 U.S.C. § 1, *et seq.*, substantially similar to those brought by Hudgins, was filed in the United States District Court for the Eastern District of New York. *See Phuong Corp., et al v. American Express Co. and American Express Travel Related Services Co., Inc.,* CV–03–2119 (E.D.N.Y.2003). The *Phoung* plaintiffs brought their claims on behalf of a proposed national class which, American Express argues, would include members of the class Hudgins now seeks to certify. The *Phoung* action subsequently was voluntarily dismissed by plaintiffs. *See Italian Colors Restaurant v. American Express Co., et al.,* 2003 WL 22682482 (N.D.Cal., November 10, 2003). American Express states that the dismissal of the *Phoung* action came as the result of American Express's invoking of an arbitration agreement which it also seeks to invoke in this case. (Docket No. 12, Docket No. 3) However, it states that other similar actions are pending in the Eastern District of Louisiana, and the Central and Northern Districts of California.[1] (Docket No. 12)

American Express argues that Hudgins now attempts to disguise what is, at heart, a federal antitrust action identical to those going forward in other district courts as a state law complaint, so as to avoid consolidation with the other pending actions and to maintain a class of Tennessee merchants separate from the nationwide class proposed in *Phoung.* American Express asserts that Hudgins has artfully pleaded federal antitrust claims under the Tennessee Trade Practices Act and Tennessee

Consumer Protection Act and argues that, because Hudgins's claims are completely preempted by federal law, this court has federal question jurisdiction over the complaint. American Express also argues that this court may exercise diversity jurisdiction over Hudgins's claims because Hudgins's individual damages "realistically should satisfy the jurisdictional amount in controversy," and because the court should assert both pendent party jurisdiction and supplemental jurisdiction over Hudgins's claims and those of the proposed class. (Docket No. 1)

## II. *DISCUSSION*

■ "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); *Husvar v. Rapoport,* 337 F.3d 603, 607 (6th Cir.2003). Indeed, 28 U.S.C. § 1441(b) instructs that only those claims may be removed in which the federal courts "have 'original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States.'" *Husvar,* 337 F.3d at 607 (6th Cir.2003) (quoting 28 U.S.C. §§ 1441(b)). Removal statutes are to be strictly construed, and "all doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. American Tobacco Co.,* 183 F.3d 488, 493 (6th Cir. 1999) The burden of proving the court's jurisdiction falls on the defendant who seeks removal. *See Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d 868, 871 (6th Cir. 2000) (internal citations omitted). The existence of federal jurisdiction is determined from the content of the plaintiff's allegations. *See Louisville & Nashville*

---

1. One of these actions, *Italian Colors Restaurant,* was transferred to the Southern District of New York from the Northern District of California on November 10, 2003. *See Italian Colors Restaurant,* 2003 WL 22682482 (N.D.Cal., November 10, 2003).

*R.R. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908). Further, "a cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

## A. *Diversity Jurisdiction Pursuant to 28 U.S.C. § 1332*

American Express first argues that this court may exercise diversity jurisdiction over Hudgins's claims pursuant to 28 U.S.C. § 1332. Section 1332(a) provides, "[t]he District court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between ... citizens of different states." 28 U.S.C. § 1332(a). Hudgins and American Express do not dispute that complete diversity exists among the parties. However, in its complaint, Hudgins pleads as follows:

> There is no federal diversity jurisdiction. The total amount in controversy as to Plaintiff individually does not exceed $75,000, even if trebled. Furthermore, Plaintiff waives any claim or damages it may have in excess of $75,000 or that would result in compensation, recovery or judgment against American Express in excess of $75,000.

(Docket No. 1, Ex. A ¶ 6)

American Express, in its Notice of Removal, claims that "the total value of the claimed compensatory damages, treble damages, punitive damages, injunctive relief, attorneys' fees, and further and general relief realistically should satisfy the jurisdictional amount in controversy." (Docket No. 1 ¶ 8) Moreover, it argues that Hudgins's limitation of its damages constitutes a "cynical abuse of the federal-state jurisdictional balance" and claims that Hudgins's limitation of its damages to an amount less than $75,000 "has no pur-

pose other than to destroy federal jurisdiction." (Docket No. 12, pp. 3–4) American Express urges the court to exercise its jurisdiction over Hudgins's complaint so as to prevent it from disingenuously claiming a lowered amount of damages to defeat diversity jurisdiction.

"The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mutual Ins. Co.*, 367 U.S. 348, 353, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961) (quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)). If a plaintiff "does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. at 294, 58 S.Ct. 586; *Gafford v. General Elec. Co.*, 997 F.2d 150, 157 (6th Cir.1993); Wright, Miller and Cooper, FEDERAL PRACTICE AND PROCEDURE 3D (hereinafter, FEDERAL PRACTICE AND PROCEDURE) § 3725 ("This rule is applicable even when the plaintiff has a claim for more than the jurisdictional amount but chooses to waive part of it and bring an action in a state court for less than the statutory minimum."). Further, "a defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements." *Gafford*, 997 F.2d at 155.

Where, as here, the defendant's argument for removal is based upon a contention that the plaintiff's claims do, in fact, meet the amount in controversy, the defendant must demonstrate by a preponderance of the evidence that the amount in controversy has been met. *See Hayes v. Equitable Energy Resources Co.*, 266 F.3d

560, 572 (6th Cir.2001); *Gafford,* 997 F.2d at 157. While American Express strongly argues that Hudgins's claim of damages is not made in good faith, it presents no evidence to demonstrate that Hudgins's damages, if proved, will exceed $75,000. The only estimate of damages before the court is Hudgins's own assertion that it does not claim more than the requisite jurisdictional amount. It is not enough for American Express to assert, without more, that Hudgins's claims "realistically" should exceed the jurisdictional amount. American Express must demonstrate by a preponderance of the evidence that Hudgins's damages will exceed the requisite sum. It has not done so in this case.[2]

### B. *Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367*

 While Hudgins has limited its own claims for damages to an amount less than $75,000, it states in its Memorandum of Law in support of the Motion to Remand that "[t]he limitation on damages applies solely to the named plaintiff, Hudgins Moving & Storage Co., Inc., and not to other members of the class" it seeks to represent. (Docket No. 9, p. 12 n. 1) Hudgins then cites the rule of *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), that, to invoke the court's diversity jurisdiction, "[e]ach plaintiff in a Rule 23(b)(3) class action must satisfy the jurisdictional amount." *Zahn,* 414 U.S. at 301, 94 S.Ct. 505. Therefore, it argues, even if some class members might bring claims warranting damage awards in excess of $75,000, because the claims of at least one plaintiff—Hudgins itself—do not meet the jurisdictional amount, diversity jurisdiction is defeated for the class as a whole. American Express argues in response that five circuits now hold that the Judicial Improvements Act of 1990, 28 U.S.C. § 1367, overruled *Zahn,* and that a court may now exercise supplemental jurisdiction over the claims of class members whose damages do not meet the jurisdictional amount, so long as the court may exercise proper diversity jurisdiction over at least one class member's claim. American Express urges this court similarly to find that *Zahn* has been overruled, and, accordingly, to find that this court may extend supplemental jurisdiction to Hudgins's claims on the basis that claims of members of the unnamed class will meet the jurisdictional amount.

Section 1367, enacted as part of the Judicial Improvement Act of 1990, provides, in relevant part:

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over

---

**2.** In its Notice of Removal, American Express notes that Tennessee Rule of Civil Procedure 54.03 provides that, "except as to a party against whom a judgment is entered by default, every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Tenn. R. Civ. P. 54.03. American Express thereby implies that, were Hudgins's case remanded to state court, this rule would allow it to seek and recover substantially more than the amount claimed on the face of its complaint, in excess of the jurisdictional amount. The Sixth Circuit has also noted this potential inconsistency, and has held that, "in such situations, the removing defendant must show that it is 'more likely than not' that the plaintiff's claims meet the amount in controversy requirement." *Rogers v. Wal–Mart Stores, Inc.,* 230 F.3d at 871 (quoting *Gafford,* 997 F.2d at 158). Again, because American Express has presented no evidence to demonstrate its estimate of Hudgins's damages, the court cannot find it that, more likely than not, Hudgins's claims will meet the amount in controversy requirement.

all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367.

Of the courts of appeal that have considered the question, five have found the plain meaning of the statute to be unambiguous, and have followed the reasoning of the first court to consider this question, the Fifth Circuit in *Free v. Abbott Laboratories*, 51 F.3d 524 (1995). Finding the statute's language to be "the sole repository of congressional intent where the statute is clear and does not demand an absurd result," the Fifth Circuit found that "[t]he statute's first section vests federal courts with the power to hear supplemental claims generally, subject to limited exceptions set forth in the statute's second section. Class actions are not among the enumerated exceptions." *Abbott Laboratories*, 51 F.3d at 528. Therefore, the court held, "under § 1367 a district court can exercise supplemental jurisdiction over members of a class, although they did not meet the amount-in-controversy requirement, as did the class representatives."

*Id.* at 529. The Fourth, Seventh, Ninth, and Eleventh Circuits have each employed a plain-text reading of § 1367 to reach the same holding that *Zahn* has been overruled, and that the court may exercise supplemental jurisdiction over members of a proposed class whose claims may not meet the jurisdictional minimum. *See Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1255–56 (11th Cir.2003) ("The fact that Congress created explicit exceptions to § 1367(a)'s broad grant of supplemental jurisdiction but did not include Rule 23 among them leads us to conclude that it did not intend to prevent district courts from exercising supplemental jurisdiction over the claims of class members."); *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 122 (4th Cir.2001) ("If Congress wishes to exempt diversity class actions from supplemental jurisdiction, it need do nothing more than insert the words 'Rule 23' into § 1367(b)'s list of exceptions."); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir.2001) ("[W]e do not find ourselves at liberty to hold that *Zahn* survives § 1367. If courts could ignore the plain meaning of statutory texts because their legislative histories showed that some (or even many) of those who drafted and voted for the texts did not understand what they were doing, the plain meaning of many statutes, not only § 1367, would be in jeopardy."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997) (holding that class members may "piggyback" on a named plaintiff's claim "even though their own claims are for less than the jurisdictional minimum amount.").

The Third, Eighth, and Tenth Circuits have disagreed with the position that § 1367 can be defined entirely from its text and have turned to its legislative history for guidance in determining whether it implicitly overrules *Zahn*. The Tenth

Circuit, in *Leonhardt v. Western Sugar Co.*, 160 F.3d 631 (10th Cir.1998) held that,

> In our view, a literal and textually faithful reading of § 1367(a) leads to the opposite conclusion from that of the Fifth and Seventh Circuits. Section 1367(a) specifically addresses "any civil action of which the district courts have *original jurisdiction.*" It then provides for *supplemental jurisdiction* over transactionally related claims. Section 1332 is what confers original jurisdiction over diversity cases and it expressly requires that the "matter in controversy exceed [ ] the sum or value of $75,000." .... Thus, Congress in § 1367(a) expressly excepted claims brought under § 1332 and its well-understood definition of "matter in controversy." *See* [James E. Pfander, Supplemental Jurisdiction and Section 1367: The Case for Sympathetic Textualism (1998) (unpublished manuscript, on file with the University of Illinois Law School)] ("Section 1367(a) appears to assume that the existing rules of original jurisdiction will continue to apply and that the grant of supplemental jurisdiction will come into play only after the plaintiff has submitted claims in a well-pleaded complaint that properly invoke such original jurisdiction.").

*Leonhardt,* 160 F.3d at 640.

The Tenth Circuit then looked to § 1367's legislative history, finding it to support further the holding of the case. Specifically, the court highlighted the House Report that accompanied the Judicial Improvements Act, which read, in part, "The section is not intended to affect the jurisdictional requirements of 28 U.S.C. § 1332 in diversity-only class actions ...." *Id.* at 640. The House Report then continues to cite *Zahn* as an example of a case interpreting the requirements of § 1332 that is not to be affected by § 1367's enactment. *Id.* Based upon its reading of § 1367's text and its analysis of its legislative history, the Tenth Circuit held that "the enactment of § 1367 did not overrule *Zahn's* holding that each plaintiff in a diversity-based class action must meet the jurisdictional amount in controversy under § 1332." *Id.* at 641. Following substantially similar reasoning, the Third and Eighth Circuits have agreed. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir.2000); *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 222 (3rd Cir.1999) ("Our review of the text, legislative history, and origins of Section 1367 leads us to hold that it preserves the prohibition against aggregation outlined in *Zahn* ... and thus maintains the traditional rules governing diversity of citizenship and the amount in controversy under 28 U.S.C. § 1332.").

■ The Supreme Court granted certiorari in the Fifth Circuit's *Abbott Laboratories* decision, but, after the recusal of Justice O'Connor, it affirmed the Fifth Circuit's decision without opinion by an equally divided court. *See* 529 U.S. 333, 120 S.Ct. 1578, 146 L.Ed.2d 306 (2000). The Court's decision, therefore, has no precedential value. *See Rutledge v. U.S.*, 517 U.S. 292, 293, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

The Sixth Circuit has not yet considered the question of § 1367's effect on *Zahn* and supplemental jurisdiction in the context of class actions. Of the district courts within the Sixth Circuit that have addressed this issue, the great majority have agreed with the Third, Eighth, and Tenth Circuits, and found *Zahn* to remain good law. *See Durant v. Servicemaster Co. Trugreen, Inc.,* 147 F.Supp.2d 744 (E.D.Mich.2001) (finding *Zahn* to be unaffected by the enactment of § 1367); *Krieger v. Gast,* 197 F.R.D. 310 (W.D.Mich.2000) (same); *Knauer v. Ohio State Life Ins. Co.,* 102 F.Supp.2d 443 (N.D.Ohio 2000) (same); *Casteel v. Sara Lee Corp.,* 51

F.Supp.2d · 816 (E.D.Mich.1999) (same); *Crosby v. America Online, Inc.,* 967 F.Supp. 257 (N.D.Ohio 1997) (same); *Waters v. Grosfeld,* 904 F.Supp. 616 (E.D.Mich.1995) (same). *But see Olden v. LaFarge Corp.,* 203 F.R.D. 254, 264–65 (E.D.Mich.2001) ("This Court holds, in accordance with the decisions of the Fourth, Fifth, Seventh, and Ninth Circuits that 28 U.S.C. § 1367 confers on the Court subject matter jurisdiction over claims by putative class members which do not entail $75,000 in controversy but which form part of the same case or controversy as the claims by other class members which exceed the jurisdictional amount.").

This court, however, need not choose the better position in the context of this case, as American Express's argument does not succeed, even if the court were to find *Zahn* overruled by the enactment of § 1367. In each of the cases in which supplemental jurisdiction over class members' claims was permitted under § 1367, the named plaintiff or plaintiffs presented claims meeting the jurisdictional minimum. Here, it is the sole named plaintiff, Hudgins, that disclaims damages in excess of the $75,000. Even courts that have found an implied repealing of *Zahn* by § 1367 still require, at minimum, that the claim of at least one named plaintiff or class representative meet the requisite jurisdictional amount. *See Allapattah Services,* 333 F.3d at 1256 ("Thus, we find that § 1367 clearly and unambiguously provides district courts with the authority in diversity class actions to exercise supplemental jurisdiction over the claims of class members who do not meet the minimum amount in controversy as long as the district court has original jurisdiction over the claims of at least one of the class representatives."); *Gibson,* 261 F.3d at 937 ("Therefore, if there is complete diversity and a sufficient amount in controversy for the named plaintiff or plaintiffs in the complaint, there is 'original jurisdiction' under sub-

section (a) over the class action . . . ."); *In re Brand Name Prescription Drugs,* 123 F.3d at 607 ("At least one named plaintiff must satisfy the jurisdictional minimum."). *See also* 5 James Moore, et al., MOORE'S FEDERAL PRACTICE § 23.07(3)(c) at 23–47 (3d ed. 1998) ("Even if 28 U.S.C. § 1367 reverses *Zahn* ... the statute does not permit supplemental jurisdiction over a class action in which *unnamed* class members meet the amount-in-controversy requirement, but the named plaintiff does not.").

The Ninth Circuit, in *Gibson,* considered in detail the question of whether there can be supplemental jurisdiction over the claims of both named and unnamed class members when only an unnamed member of the class satisfies the jurisdictional amount. First, as the court noted, a complaint bringing claims on behalf of a proposed class is not a class action when filed; rather, until the class is certified, it brings only the named plaintiff's claims before the court. *See Gibson,* 261 F.3d at 940. If the plaintiff fails on his motion for class certification, only his claims will proceed. Thus, to base jurisdiction upon an as-yet-unnamed member of the proposed class risks that jurisdiction will fall away if the class is not certified or if the class member whose claim meets the jurisdictional amount opts out of the class under Rule 23(b)(3). *See Tortola Restaurants, L.P. v. Kimberly–Clark Corp.,* 987 F.Supp. 1186, 1190 (N.D.Cal.1997).

Moreover, examining only the claims of the named plaintiffs to determine existence of the amount-in-controversy requirement mirrors the method by which courts determine whether diversity of citizenship exists in a class action, where only the citizenship of the named plaintiffs is considered. *See Gibson,* 261 F.3d at 941; *In re High Fructose Corn Syrup Antitrust Litig.,* 936 F.Supp. 530, 532 (C.D.Ill.1996) (consider-

ing only named plaintiff's claims to determine existence of supplemental jurisdiction). Finally, the *Gibson* court noted that more practical considerations also supported a requirement that the named plaintiff's claims meet the jurisdictional minimum. As the court observed, "[I]f the claim of an unnamed class member could support removal of the entire action, a removing defendant might be entitled to discovery not merely from named, but also from unnamed, class members." *Id.*

This court agrees with the *Gibson* court's analysis and the holdings of the Eleventh and Seventh Circuits, as well as the commentary of secondary authorities that, even if *Zahn* is no longer good law, § 1367 still requires that at least one named plaintiff's claims meet the jurisdictional minimum to establish the court's original jurisdiction over the claims of the plaintiff and the proposed class. Without jurisdiction over a known plaintiff, presently before the court, whose claims are at the heart of the proposed action and from whom discovery is available, the court finds it has no foundation from which it may extend supplemental jurisdiction over any unknown class members' claims. Accordingly, as this is the case in the present action, the court finds that it cannot find diversity jurisdiction over Hudgins's claims under § 1367.

As a final matter on this issue, American Express argues that Hudgins cannot unilaterally waive the ability of the members of the class he seeks to represent to obtain damages in excess of $75,000. Of course, this is not what Hudgins has done in its complaint; it waives only its own claim of greater damages and leaves those of the proposed class members unrestricted. While the court finds that Hudgins's creative pleading does not invoke its diversity jurisdiction, the court does note that Hudgins's restriction of its own damages, but not those of the class it seeks to represent,

raises questions as to Hudgins's ability to adequately represent the claims of the proposed class. *See, e.g., Hall v. ITT Financial Services*, 891 F.Supp. 580, 582 (M.D.Ala.1994) (finding question as to whether class representative who unilaterally restricted recovery of all class members was an adequate class representative). If Hudgins does not seek the full amount of potential damages for itself, a question may exist as to whether it will zealously seek all possible damages for the class members it represents. That question, however, is not before this court and must be reserved to the court that will ultimately hear Hudgins's motion for class certification.

### C. *Pendent Party Jurisdiction*

 American Express argues that this court may alternatively employ § 1367 to exercise pendent party jurisdiction over Hudgins's claims. "Pendent party jurisdiction is a subcategory of supplemental jurisdiction. It is 'the authority of the federal court to hear claims against additional parties, over which it would not otherwise have jurisdiction, because those claims arise from a common nucleus of operative facts.' Stated differently, 'if a plaintiff presents a federal question and another possible plaintiff presents a state law claim arising from the same set of facts, [whether] the federal court [can] entertain the latter suit.'" *Lessard v. City of Allen Park*, 247 F.Supp.2d 843, 860 (E.D.Mich.2003) (internal citations omitted). American Express contends that, because a federal court has exerted jurisdiction over the *Phoung* proceedings, this federal court may claim pendent party jurisdiction over Hudgins's claims, as both actions arise from a common nucleus of fact. American Express's arguments have no merit.

As summarized by Wright and Miller,

It should be noted that supplemental jurisdiction under Section 1367 of Title 28 is not a source of original subject matter jurisdiction for federal question purposes and thus a removal notice under Section 1441(a) may not base removal subject matter jurisdiction on the supplemental jurisdiction statute. Defendants often will assert that an already pending federal action that has a common nucleus of operative fact with the state action for which removal is sought can satisfy the requirements of Section 1367(a) and thus of Section 1441(b). This is a misreading of the language of Section 1367.

FEDERAL PRACTICE AND PROCEDURE § 3722, pp. 384–85.

■■■■ First and foremost, this court does not have jurisdiction over the *Phoung* proceedings, or any of the other related cases now pending in federal court. Thus, this court has no related pending federal action that might serve as a basis for the exercise of pendent jurisdiction over Hudgins's claims. Moreover, even if one or more of the related actions were filed before this court, "the supplemental jurisdiction statute does not allow a party to remove an otherwise unremovable action to federal court for consolidation with a related federal action." *In re Estate of Tabas,* 879 F.Supp. 464, 467 (E.D.Pa.1995). Some basis for original federal jurisdiction must exist within the complaint itself. Simply put, "[t]he supplemental-jurisdiction statute is not a source of original subject-matter jurisdiction, and a removal petition therefore may not base subject-matter jurisdiction on the supplemental-jurisdiction statute, even if the action which a defendant seeks to remove is related to another action over which the federal district court already has subject-matter jurisdiction, and even if removal would be efficient." *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 456 (6th Cir.1996) (internal citations omitted) (citing *Estate of Tabas,* 879 F.Supp. at 467).

## D. *Federal Question Jurisdiction Pursuant to 28 U.S.C. § 1331*

■■■■ Finally, the court turns to American Express's argument that the court has federal question jurisdiction over Hudgins's claims. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar,* 482 U.S. at 392, 107 S.Ct. 2425. Under this rule, "the plaintiff is master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id.* A defense is not considered part of a plaintiff's well-pleaded complaint. *See Metropolitan Life Ins. Co.,* 481 U.S. at 63, 107 S.Ct. 1542 (1987). The plaintiff's own statement of his or her action must show that it is based on or arises under federal law. "Thus, a defense that relies on the preclusive effect of a prior federal judgment, or the pre-emptive effect of a federal statute, will not provide a basis for removal. As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial National Bank v. Anderson,* 539 U.S. 1, 123 S.Ct. 2058, 2062, 156 L.Ed.2d 1 (2003) (internal citations omitted).

■■■■ However, "[a]llied as an 'independent corollary' to the well-pleaded complaint rule is the further principle that 'a plaintiff may not defeat removal by omitting to plead necessary federal questions.'" *Rivet v. Regions Bank of Louisiana,* 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998) (citing *Franchise Tax Bd. Of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1,

22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Where a court finds that a plaintiff has "artfully pleaded" his or her claims to avoid bringing them under federal law, the claims may be removed, although no federal claim appears on the face of the plaintiff's complaint. *See id.* The artful pleading doctrine is generally invoked to allow removal where federal law completely preempts a plaintiff's state-law claims. "Although federal preemption is ordinarily a defense, 'once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Id.* at 476, 118 S.Ct. 921. The Supreme Court has found complete pre-emption only in two categories of cases—those brought under the Labor Management Relations Act and ERISA— where "the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." *Beneficial National Bank,* 539 U.S. at ——, 123 S.Ct. at 2063.

■ American Express argues that Hudgins's claims of anticompetitive activity brought under the Tennessee Unfair Trade Practices Act (TTPA) and the Tennessee Consumer Protection Act (TCPA) are completely pre-empted by federal antitrust law. Therefore, it contends, this court must, under the artful pleading doctrine, recognize Hudgins's claims as arising exclusively under federal law and remove them from the state court in which they were filed. The court disagrees and finds that Hudgins's claims are properly filed in Tennessee state court.

■ Antitrust is not one of the limited areas in which the Supreme Court has recognized complete preemption of state law by federal statute. Rather, the Court has held that "Congress intended the federal antitrust laws to supplement, not dis-place, state antitrust remedies. And on several prior occasions, the Court has recognized that the federal antitrust laws do not pre-empt state law." *California v. ARC America Corp.,* 490 U.S. 93, 102, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989); *Pinney Dock and Transport Co. v. Penn Cent. Corp.* 838 F.2d 1445, 1481 (6th Cir.1988) (finding "no suggestion that Congress has preempted the entire field of antitrust regulation"). American Express, however, argues that Hudgins's claims are necessarily federal antitrust claims because the TTPA and TCPA are construed to apply only to unlawful restraint of trade that is intrastate in character, while the activities Hudgins now alleges predominantly affect interstate commerce, the province of federal antitrust law.

■ In *Blake v. Abbott Laboratories,* 894 F.Supp. 327 (E.D.Tenn.1995), Judge Jordan of the U.S. District Court for the Eastern District of Tennessee considered the question of the removal of a complaint in which the plaintiff brought claims of anticompetitive activity under the TTPA and TCPA. Defendants sought removal based on a substantially similar argument that the Tennessee statutes applied only to transactions that are predominantly intrastate in character and that, therefore, plaintiff's claims of interstate antitrust conspiracy could only be brought under federal law. *Blake,* 894 F.Supp. at 328. The court found that "the correct response to this somewhat elaborate argument in support of the asserted ground for removal, however, is that it is an argument in support of a motion to dismiss the plaintiff's cause of action under Tennessee unfair trade practices law which should be addressed to a Tennessee Court." *Id.* at 329. As the court continued, "The plaintiff was free to choose not to state a cause of action under federal law, and the defendants may not state such a cause of action for her ... Even if federal preemption

provides an exception to this 'well-pleaded complaint' rule in a limited category of cases, it cannot be of use to the defendants here, because federal antitrust law does not preempt state antitrust law." *Id.* The *Blake* court's analysis is well reasoned and applies equally in this case.

American Express candidly admits in its Response in Opposition to Hudgins's motion for remand that, in a recent opinion, *Sherwood v. Microsoft Corp.*, 2003 WL 21780975 (Tenn.Ct.App. July 31, 2003) (unpublished opinion), the Tennessee Court of Appeals broadened the standard applied in *Blake* and other prior decisions as to the scope of the TTPA and held that it could "find no basis for a requirement that the illegal conduct [prohibited by the TTPA] predominantly affect intrastate commerce." *Id.* at *21. Rather, as the court held,

> Because the legislature put no words in the statute limiting its application to conduct predominantly affecting intrastate commerce, because our highest court has determined that the legislature intended the scope of the statute to extend as far as allowed by the United States Constitution, and because the allowable scope has greatly expanded, we conclude that Tennessee's Trade Practices Act applies to illegal conduct that substantially affects commerce within this state.

*Id.*

American Express notes that the *Sherwood* decision stands in conflict with another decision of the Tennessee Court of Appeals, *Lynch Display Corp. v. National Souvenir Center*, 640 S.W.2d 837 (Tenn.Ct. App.1982), in which the court held the TTPA to apply only in cases where the illegal conduct in question was shown to "predominantly affect" intrastate commerce. What American Express's argument serves to highlight, however, is merely the fact that "it is not federal law that determines whether Tennessee has jurisdiction under the TTPA. Rather, it is state law that determines what degree of connection with or impact upon commerce within the state must exist." *Sherwood,* 2003 WL 21780975 at *9. Whether Tennessee law provides a remedy for Hudgins's claims or whether those claims may find redress only under federal antitrust statutes is a question of Tennessee state law.[3] As the Tennessee courts further develop their analysis of the statutes' breadth, it may well become evident that Hudgins's state law claims cannot succeed.[4] However, that is a defense to be raised by American Express in the state court proceedings and does not provide a ground for removal of Hudgins's state law claims to this court. *See Beneficial National Bank,* 539 U.S. at ——, 123 S.Ct. at 2063 (holding that, absent evidence that Congress intended a federal statute to provide the exclusive remedy for a plaintiff's claims, the question of preemption by federal law is solely a defense, and does not justify removal).

### III. CONCLUSION

For the reasons stated herein, Hudgins's motion for remand to the Circuit Court of

---

**3.** Nor is there any indication that the sort of illegal tying agreement alleged by Hudgins is not recognized under Tennessee law. In fact, one of the claims pursued by plaintiffs in *Sherwood* under the TTPA is an illegal agreement purportedly tying the sale of Microsoft's Windows operating systems to other Microsoft software products. *See Sherwood v. Microsoft Corp.*, 2000 WL 33200786 *1 (Tenn. Cir.Ct.2000) (reversed on other grounds).

**4.** Indeed, the *Sherwood* decision goes on to hold that "the legislature intended that antitrust actions, those involving harm to competition, continue to be brought under the existing antitrust statute, the TTPA. Consequently, we conclude that claims based upon anticompetitive conduct are not cognizable under the TCPA." *Sherwood,* 2003 WL 21780975 at *33.

Davidson County will be granted. An appropriate order will issue.